RUPERTO GAYTON, Employee-Plaintiff-Appellee v. GAGE CAROLINA METALS INC., Employer, KEY RISK MANAGEMENT SERVICES, INC., Servicing Agent, Defendant-Appellants

No. COA01-234

(Filed 19 March 2002)

**Worker's Compensation— illegal alien—disability**

The Industrial Commission did not err in a worker's compensation proceeding by requiring defendants to continue to pay benefits until an illegal alien returns to work. The employer has the burden of returning the employee to a state where the employee could obtain employment "but for" his illegal status, with the employee's illegal alien status being the last consideration.

Judge WALKER concurring

Appeal by defendants from an opinion and award entered 8 November 2000 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 January 2002.

*Robert J. Willis for plaintiff-appellee.*

*Lewis & Roberts, P.L.L.C., by Timothy S. Riordan and John H. Ruocchio, for defendant-appellants.*

*North Carolina Justice and Community Development Center, by Carol Brooke, for El Pueblo, Inc., North Carolina Council of Churches Farmworker Ministry Committee, and the North Carolina Chapter of the National Lawyers Guilda, amicus curiae.*

McGEE, Judge.

Defendants appeal from the opinion and award of the Industrial Commission which denied their request to terminate workers' compensation benefits awarded to plaintiff Ruperto Gayton. When plaintiff began working for defendant Gage Carolina Metals, Inc., he presented a false social security card and a false resident alien card. Defendant Gage Carolina Metals, Inc. failed to require plaintiff to complete an Employment Eligibility Verification form (I-9 form), which would have required plaintiff to swear under oath that the social security and resident alien cards were valid.

Plaintiff sustained an injury while working for defendant Gage Carolina Metals, Inc. on 19 May 1997. Plaintiff injured his back while he was moving a pallet, resulting in two herniated central discs. Defendants accepted the claim and began paying plaintiff temporary total disability.

Following the accident, plaintiff received treatment from Dr. William Markworth for several months. Dr. Markworth determined plaintiff reached maximum medical improvement on 4 March 1998 and ordered a functional capacity evaluation to determine the appropriate work restrictions for plaintiff. Plaintiff was released to return to work on 6 April 1998 with restrictions not to engage in heavy lifting over twenty pounds and that he be allowed to change positions frequently. In consideration of these restrictions, defendant Gage Carolina Metals, Inc. determined plaintiff could not return to his previous job and hired Janet Clarke, a vocational rehabilitation specialist, to assist in returning plaintiff to suitable employment outside of Gage Carolina Metals, Inc.

Clarke attempted to place plaintiff with a company at which he had previously worked, Leslie Locke. However, when she attempted to have plaintiff hired through Manpower, a temporary service which

handled all of Leslie Locke's new placements, Manpower discovered plaintiff's illegal status and refused to hire him. Clarke later performed a labor market survey. She contacted twenty-one potential employers in the area; however, most were out of business, unavailable, or had no jobs suitable for plaintiff's work restrictions. Clarke did not present any specific job available for plaintiff that met his work restrictions. Peggy Bowen, a branch manager of Manpower, stated that Leslie Locke did request workers from Manpower, and she was not aware of any reason they would not have hired plaintiff had he been a legal alien.

Defendants filed a Form 24 application to terminate benefits to plaintiff on 13 July 1998. The Industrial Commission denied this application. Defendants appeal from this denial.

Defendants argue several assignments of error all of which essentially concern the procedure used by the Industrial Commission following defendants' filing of a Form 24 application to terminate workers' compensation benefits to plaintiff. Defendants argue the Industrial Commission erred in requiring defendants to continue to pay ongoing benefits until plaintiff, an illegal alien, returns to work. Defendants argue this error occurred because the Industrial Commission erred in not reaching the ultimate issue in this case as to whether defendants are obligated to violate federal law by returning plaintiff to work through vocational rehabilitation and other commonly accepted ways to terminate benefits following the filing of a Form 24. Defendants contend plaintiff's illegal work status should constitute a constructive refusal to perform vocational rehabilitation; therefore, defendants should be allowed to terminate benefits pursuant to N.C. Gen. Stat. § 97-25. We disagree with defendants' assignments of error as they pertain to the case before us.

North Carolina has well established procedures in place under our Workers' Compensation Act for dealing with injured employees and their return to the workplace.

> A claimant who asserts that he is entitled to compensation under N.C. Gen. Stat. § 97-29 has the burden of proving that he is, as a result of the injury arising out of and in the course of his employment, totally unable to "earn wages which . . . [he] was receiving at the time [of injury] in the same or any other employment."

Burwell v. Winn-Dixie Raleigh, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994) (quoting Tyndall v. Walter Kidde Co., 102 N.C. App. 726,

730, 403 S.E.2d 548, 550, *disc. review denied*, 329 N.C. 505, 407 S.E.2d 553 (1991)). Defendants admitted liability in this case in that plaintiff's injury arose out of and in the course of employment. Defendants also concede that plaintiff's status as an illegal alien is not a bar to his receiving workers' compensation benefits pursuant to *Rivera v. Trapp*, 135 N.C. App. 296, 519 S.E.2d 777 (1999) (holding that illegal aliens are not barred from workers' compensation benefits and that illegal aliens possess an earning capacity based on pre-injury wages).

Once a plaintiff has established a compensable injury, "there is a presumption that disability lasts until the employee returns to work and likewise a presumption that disability ends when the employee returns to work at wages equal to those he was receiving at the time his injury occurred." *Watkins v. Motor Lines*, 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971). Once the claimant has established disability, "the employer has the burden of producing evidence to rebut the claimant's evidence. This requires the employer to 'come forward with evidence to show not only that suitable jobs are available, *but also that the plaintiff is capable of getting one,* taking into account both physical and vocational limitations.' " *Burwell*, 114 N.C. App. at 73, 441 S.E.2d at 149 (quoting *Kennedy v. Duke Univ. Med. Center*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990) (emphasis in *Burwell*)).

Defendants argue, however, that due to plaintiff's illegal status, it is theoretically impossible for defendants to overcome this burden since plaintiff is an illegal alien who will never legally be capable of obtaining a job until plaintiff obtains proper work authorization. Plaintiff, at least theoretically, would have no incentive to achieve legal status since he can continue to draw total disability benefits indefinitely. The crux of defendants' argument is that they contend federal law prohibits their ability to perform vocational rehabilitation for plaintiff, or to return plaintiff to suitable employment. Federal law states "it is unlawful for a person or other entity to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien." 8 U.S.C. § 1324a(a) (1) (A) (1994).

Defendants contend the use of vocational rehabilitation constitutes a recruitment as well as a referral; therefore, they are barred from using these practices. However, the phrase "recruit for a fee" is defined as "the act of soliciting a person, directly or indirectly, and referring that person to another with the intent of obtaining employ-

ment for that person, for remuneration whether on a retainer or contingency basis." 8 C.F.R. § 274a.1 (e) (2001). The definition of referral is similar. To refer someone for a fee "means the act of sending or directing a person or transmitting documentation or information to another, directly or indirectly, with the intent of obtaining employment in the United States for such person, for remuneration whether on a retainer or contingency basis." 8 C.F.R. § 274 a.1 (d) (2001).

We agree that engaging in vocational rehabilitation that violates these provisions should be avoided; however, several vocational rehabilitation practices are available to defendants which would not violate federal law. Defendants can perform labor market surveys to determine what jobs, if any, are available in the area where plaintiff resides that fit plaintiff's physical limitations. Vocational rehabilitation services may also include counseling, job analysis, analysis of transferable skills, job-seeking skills training, or vocational exploration. See N.C. Industrial Commission Rules for the Utilization of Rehabilitation Professionals in Workers' Compensation Claims (III)(E)(1) (effective 1 June 2000). Vocational rehabilitation is not limited to the services enumerated in the Workers' Compensation Rules. Other services the employer might choose to utilize may include teaching an employee new work skills, teaching an employee to speak and read English, or assisting an employee in earning a General Equivalency Diploma.

While we agree employers may not rehire illegal aliens to the same pre-injury job or any other suitable job, federal law does not prevent looking into the surrounding community to locate other suitable jobs the plaintiff might be able to obtain but for the plaintiff's illegal alien status. Furthermore, it is not required that the employer produce a specific job that has already been offered to the employee in order to terminate workers' compensation benefits.

> An employee is "capable of getting" a job if "there exists a reasonable likelihood . . . that he would be hired if he diligently sought the job." It is not necessary . . . that the employer show that some employer has specifically offered plaintiff a job. If the employer produces evidence that there are suitable jobs available which the claimant is capable of getting, the claimant has the burden of producing evidence that either contests the availability of other jobs or his suitability for those jobs, or establishes that he has unsuccessfully sought the employment opportunities located by his employer.

*Burwell*, 114 N.C. App. at 73-74, 441 S.E.2d at 149 (quoting *Trans-State Dredging v. Benefits Review Bd.*, 731 F.2d 199, 201 (4th Cir. 1984)).

The reasoning set forth above has been adopted in other jurisdictions which have requirements similar to those in North Carolina for terminating workers' compensation benefits and a situation where the employee was an illegal alien. In *Reinforced Earth Co. v. W.C.A.B.*, 749 A.2d 1036 (2000), defendants argued the claimant's benefits should be suspended because the claimant would never be available for suitable employment. Normally, defendants would have been required to "establish actual job referrals." *Id.* at 1040 n5. However, the court held that defendants would have to show "evidence of earning power similar to Act 57." *Id.* at 1040. Act 57 states earning power "shall be determined by the work the employe[e] is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area." Pa. Stat. Ann. 77 P.S. § 512 (2) (Supp. 2001). The court determined that "[a]ctual job referrals would not have to be made to determine the extent of Claimant's earning power because requiring Claimant to go to interviews would be useless because he would be unable to accept any position as it would be illegal for him to work." *Reinforced Earth*, 749 A.2d at 1040. While the North Carolina Workers' Compensation Act does not exactly mirror Pennsylvania's statute, the reasoning the Pennsylvania court employed in applying workers' compensation laws to illegal aliens is sound, and this reasoning is also consistent with the ruling in *Burwell* of not requiring actual job offers to the plaintiff in order to terminate benefits.

Applying this rule to the case before us and other cases involving illegal aliens, it is the employer's burden to produce sufficient evidence that there are suitable jobs plaintiff is capable of getting, "but for" his illegal alien status. Until the employee reaches this "but for" situation, the employer may perform any vocational rehabilitation to place employee in a position where if the employee were a legal alien he could be employed. This vocational rehabilitation may even include helping the employee take steps to obtain proper authorization forms. However, we reiterate that the employee's illegal alien status is the last step for consideration. An employer still has the burden of returning the employee to a state where "but for" the illegal status, the employee could obtain employment.

In the case before us, defendants contend they had done all that was allowed under the law to return plaintiff to work, and that plaintiff's illegal alien status was the only barrier to plaintiff's returning to work. In other words, defendants argue that "but for" plaintiff's illegal status, he is capable of returning to work. We disagree. In making this argument, defendants essentially contest the Industrial Commission's finding of fact that plaintiff cannot return to work.

12. In anticipation of the hearing before the deputy commissioner, Ms. Clarke completed a labor market assessment by contacting twenty-one employers in plaintiff's general locality. Out of the twenty-one prospective employers Ms. Clarke attempted to contact, most were out of business, unavailable when she called, or had employment that would not have been suitable for plaintiff's physical capacity. . . .

13. The record contains no evidence of the physical requirements of the job at Leslie Locke or of whether plaintiff would have been able to perform the job, except that plaintiff did testify that he thought he might have been able to perform portions of the job he previously had there.

. . .

16. Although plaintiff's illegal alien status is a barrier to finding employment in the United States, at the time of the hearing before the deputy commissioner, plaintiff was unable to return to suitable employment given his pain and restrictions and his work experience and qualifications.

On an appeal from an opinion and award of the Industrial Commission, the standard of review for this Court "is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000). "The facts found by the Commission are conclusive upon appeal to this Court when they are supported by competent evidence, even when there is evidence to support contrary findings." *Pittman v. International Paper Co.*, 132 N.C. App. 151, 156, 510 S.E.2d 705, 709, *aff'd*, 351 N.C. 42, 519 S.E.2d 524 (1999). Furthermore, the " 'findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence.' " *Adams v. AVX Corp.*, 349 N.C.

676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)).

In the case before us, there is competent evidence to support the Industrial Commission's findings of fact. Defendants never conclusively identified a specific job which plaintiff would have been able to accept "but for" his illegal alien status.

Ms. Clarke made a general statement as to jobs being available at Leslie Locke; however, on cross-examination Ms. Clarke could not specifically identify any job at Leslie Locke that would be available for plaintiff and that would fit the work restrictions he required. Consequently, defendants have not proven that "but for" plaintiff's illegal alien status he could return to suitable work that met plaintiff's work restrictions.

We therefore overrule defendants' assignments of error and affirm the opinion and award of the Industrial Commission.

Affirmed.

Judge BIGGS concurs.

Judge WALKER concurs with a separate opinion.

WALKER, Judge, concurring.

I agree with the majority that the Workers' Compensation Act has not been superseded by federal law regarding the employment, referral, or recruitment of individuals who may be illegal aliens. Therefore, the obligations and burdens, as set forth in the Workers' Compensation Act and our case law, of an employer of an injured illegal alien are no different from those of an employer whose injured employee is not an illegal alien.

The burden is on the employer to show that there are suitable jobs available for the employee which he is capable of performing "considering his age, education, physical limitations, vocational skills, and experience." *Burwell v. Winn-Dixie Raleigh*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994); *McCoy v. Oxford Janitorial Service Co.*, 122 N.C. App. 730, 733, 471 S.E.2d 662, 664 (1996). Here, the Commission found that "at the time of the hearing before the deputy commissioner, plaintiff was unable to return to suitable employment given his pain and restrictions and his work experience

and qualifications." There is competent evidence in the record to support the findings of the Commission. Thus, the employer has not met its burden and is required to continue payments under N.C. Gen. Stat. § 97-29 (1999).

However, once the employer does present evidence sufficient to meet its burden as set forth in *Burwell* and *McCoy,* the burden shifts back to the employee to either present evidence to dispute the employer or to show that he had unsuccessfully sought employment. *McCoy,* 122 N.C. App. at 733, 471 S.E.2d at 664. If "the plaintiff [does] not make a 'reasonable effort to find employment,' " he has "failed in his obligation to seek employment opportunities located by the employer and thus failed to satisfy his burden." *Id.* The failure of the plaintiff to receive the status of a legal alien would be a crucial fact for the Commission in its determination of whether plaintiff has made a reasonable effort to find employment and meet his burden as set forth in *McCoy.*

Here, we need not reach the analysis of whether the plaintiff has made such a reasonable effort to find employment because the employer has failed to present sufficient evidence to meet its burden. Until such time, the question of the illegal alien status of the plaintiff is not a factor for consideration by the Commission.