***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner
 ***********
The Full Commission finds as fact and concludes as matters of the law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On the date of plaintiff's alleged injury, February 1, 2000, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer.
3. The insurer on the risk at the time of the alleged injury was EBI Companies.
4. The date of the alleged injury was on or about February 1, 2000.
5. The alleged nature of plaintiff's injury was lumbar radiculopathy with activation of degenerative disc disease.
6. The parties have not been able to agree as to plaintiff's average weekly wage, and have submitted an IC Form 22.
7. Plaintiff is claiming temporary total disability compensation from September 8, 2000 through March 18, 2001 and from April 17, 2001 to the present.
8. The last day that plaintiff worked for the Defendant-employer was April 16, 2001.
9. Plaintiff contends that the following issues are to be determined by the Commission:
 (a) Did plaintiff sustain an accident arising out of and in the course of his employment with defendant-employer?
 (b) Did plaintiff sustain any temporary total disability as a result of injuries sustained in an accident arising out of and in the course of his employment with defendant-employer?
 (c) Is plaintiff in need of medical treatment for injuries that he sustained in an accident arising out of and in the course of his employment with defendant-employer?
 (d) Has plaintiff reached maximum medical improvement from any injuries sustained in an accident arising out of and in the course of his employment with defendant-employer?
10. Defendants contend that the following issues are to be determined by the Commission:
 (a) Was plaintiff laid off by defendant-employer for reasons unrelated to his workers' compensation claim?
 (b) Is plaintiff entitled to any indemnity benefits pursuant to his lay-off from his employment by defendant-employer?
 (c) Does plaintiff's return to work on March 19, 2001 with defendant-employer constitute proof of wage earning capacity?
 (d) Did plaintiff voluntarily leave his employment on April 17, 2001, and if so, did plaintiff unjustifiably refuse work within his restrictions as given by his physician and is he disqualified from further workers' compensation benefits as a result?
(e) Is plaintiff employable in the general labor market?
11. The parties submitted a set of medical records via stipulation.
12. The deposition of Dr. James Hoski is a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing in this matter, plaintiff was forty-one (41) years old. Plaintiff is a high school graduate whose work experience includes truck driver and delivery person, painter, mechanic, and cook. Plaintiff has some training and has worked as a volunteer firefighter.
2. Plaintiff began working for defendant-employer as an assembly production worker in July 1999. Most of plaintiff's work involved lifting of ten to twenty pounds, but he did some lifting of heavier parts, such as forty pounds. Plaintiff also did spring mashing which involved bending, pushing, and twisting.
3. On February 1, 2000, plaintiff lifted a heavy brake to place it in a box. After plaintiff set down the brake, plaintiff twisted and felt pain in his low back. Plaintiff was able to continue working at that time despite his pain.
4. The next day, plaintiff's pain continued and he sought treatment at Murphy Medical Center where plaintiff was assessed with a lumbosacral strain. Plaintiff was given medication and advised to be on bed rest for three days.
5. On February 3, 2000, plaintiff visited chiropractor Dr. William Dyer complaining of acute back pain after boxing brakes. Dr. Dyer assessed plaintiff with a soft tissue injury and advised that plaintiff should be on light duty until February 14, 2000. Dr. Dyer treated plaintiff on February 3, 7, 10, 12, and 14, 2000. On plaintiff's last visit, Dr. Dyer referred him for further orthopedic evaluation.
6. On February 21, 2000, plaintiff saw Dr. James Hoski, an orthopedic specialist. Plaintiff reported that his back pain started after he lifted a forty pound brake at work and twisted. Dr. Hoski examined plaintiff and assessed left lumbar radiculopathy following the work-related injury and recommended a series of lumbar epidural cortico steroid injections. Plaintiff received his first injection that day. At this visit, Dr. Hoski also released plaintiff to return to light duty work.
7. Following plaintiff's release to return to light duty work from Dr. Hoski, plaintiff was given a light duty assignment and continued to work for defendant-employer. Although most of the work available with defendant-employer involved heavy lifting, there was a light duty position available with defendant-employer that accommodated plaintiff's work restrictions in the "sheltered workshop." The sheltered workshop employed handicapped workers who made suspenders and belts. The heaviest parts that plaintiff was required to lift in this light duty position weighed about four pounds.
8. Plaintiff continued to experience back pain. Following a series of three lumbar injections, plaintiff returned to see Dr. Hoski on May 3, 2000. At that time, Dr. Hoski advised that plaintiff should continue working in the sheltered workshop. Dr. Hoski continued plaintiff on Vioxx and wanted him to work on body mechanics and lumbar stabilization.
9. An MRI of plaintiff's spine performed on June 15, 2000 showed degenerative changes at L5-S1 with no nerve root compression. After reviewing the MRI scan and the radiologist's report, Dr. Hoski concluded that plaintiff was not a candidate for surgery. On plaintiff's June 30 visit, Dr. Hoski explained this to plaintiff and told him that he might be a candidate for intra-discal electro-thermal therapy (IDET). Dr. Hoski also referred plaintiff for a discogram and allowed him to continue light duty work in the sheltered workshop.
10. Dr. Thompson performed a two-level discogram on plaintiff. Dr. Hoski reviewed the discogram at plaintiff's August 18, 2000 visit and again discussed with plaintiff the option of IDET. In the IDET procedure, a local anesthetic is given, and then a needle with catheter is inserted into the disc. Heat is then applied in a controlled fashion to try to tighten the collagen and decrease pain.
11. Both the testimony of Dr. Hoski and the contentions of the parties indicate that the IDET procedure was conducted. However, there were no medical records submitted and no testimony elicited from which it can be determined the date this procedure was actually done. A reasonable inference is that the IDET procedure was performed on plaintiff sometime after August 18, 2000 and prior to his job lay-off on September 8, 2000.
12. On September 8, 2000, defendant-employer did a general layoff, which included plaintiff. At that time, plaintiff was still performing light duty in the sheltered workshop per Dr. Hoski's August 29, 2000 work restrictions of no lifting over ten pounds and to stand or sit as needed. Plaintiff's job in the sheltered workshop was not indicative of his wage-earning capacity.
13. Following the lay-off, plaintiff looked for employment, but was unable to find work within the restrictions he had at that time. It appears that this lay-off took place in the period following plaintiff's IDET procedure. The parties have indicated that plaintiff missed a week of work following the IDET procedure and wore a back brace for about twelve weeks post-procedure. During this time, plaintiff was still under a ten-pound lifting restriction.
14. Plaintiff participated in physical therapy in December 2000. Physical therapist Vance Ingle conducted a physical abilities assessment of plaintiff and reported that plaintiff improved overall in strength, flexibility, and conditioning. Plaintiff's therapy results were reported to Dr. Hoski.
15. Dr. Hoski again examined plaintiff on February 16, 2001. At that time, Dr. Hoski released plaintiff to return to work with restrictions of lifting fifty pounds occasionally, twenty pounds frequently, and ten pounds constantly. On this date, Dr. Hoski also assigned plaintiff a five percent (5%) permanent impairment rating to his back due to his work-related injury.
16. After Dr. Hoski's release with restrictions, plaintiff returned to work for defendant-employer as a spring masher on March 18, 2001. The work aggravated plantiff's back pain, and he went back out of work on April 17, 2001.
17. Plaintiff returned to see Dr. Hoski on May 9, 2001 with complaints of back pain. Dr. Hoski took him out of work from this date until an MRI could be done and a follow-up visit in June. An MRI was performed on plaintiff on June 18, 2001, and plaintiff returned to Dr. Hoski on June 27, 2001.
18. After reviewing the MRI results, Dr. Hoski determined that plaintiff was unable to perform the work of a spring masher and that he probably could not do work in the medium duty category as he had previously assessed. However, Dr. Hoski did find that plaintiff could return to sedentary or light duty work with more stringent restrictions of lifting of twenty pounds occasionally, ten pounds frequently, and five pounds constantly with no repetitive bending or twisting on a frequent basis and no prolonged sitting without being able to change positions. Even though plaintiff was given these severe work restrictions, Dr. Hoski also stated that plaintiff has a good long-term prognosis, and that it is likely that plaintiff will return to work in a medium duty job in the future.
19. Plaintiff testified that he looked for other employment between September 2000 and April 2001, within the requirements of the Employment Security Commission, in order to draw unemployment. After plaintiff left his job with defendant-employer on April 17, 2001, plaintiff had not looked for other employment as of the date of the deputy commissioner hearing in this matter. However, at that time, Dr. Hoski had taken him out of work pending the MRI and follow-up visit later in June.
20. The defendants retained John McGregor, a vocational counselor, to conduct a vocational assessment and labor market survey regarding plaintiff's employability. Mr. McGregor testified at the deputy commissioner hearing basing his assessment on the restrictions given by Dr. Hoski as of February 2001. However, after plaintiff attempted to return to work in March and then went out of work again in April, Dr. Hoski placed greater restrictions on plaintiff and moved plaintiff from the category of medium duty to light duty work. Therefore, much of the counselor's analysis is inapplicable. Defendants did not supplement this report or take further testimony from Mr. McGregor after Dr. Hoski's deposition testimony was taken.
21. Only those jobs in the light duty category would be applicable to plaintiff, based on the last assessment from Dr. Hoski. Review of the report of Mr. McGregor does show several jobs in the service industry which would appear to fit in this category, such as cashier and cook positions. However, it is not clearly established that these positions would be appropriate and within the latest restrictions given by Dr. Hoski.
22. Due to his back injury by accident of February 1, 2000, plaintiff was unable to earn wages in his regular employment or any other employment from the time of his lay off on September 8, 2000 and continuing until March 18, 2001, when he returned to light duty work with defendant-employer. Plaintiff's attempt to return to work as a spring masher was unsuccessful, as he experienced increased back pain. Plaintiff was unable to earn wages in the same or any other employment beginning again on April 17, 2001. Dr. Hoski indicated in his August 9, 2001 deposition that plaintiff could return to work in a sedentary or light duty position as of that date.
24. Plaintiff is able to return to some type of gainful employment and is a good candidate for vocational assistance. Plaintiff has a duty to seek appropriate employment. There is insufficient evidence of record from which to determine whether plaintiff has returned to work or made a good faith effort to seek employment since his last release to return to work on August 9, 2001 by Dr. Hoski.
25. The Form 22 submitted shows that over the course of his employment with defendant-employer from July 15, 1999 through January 31, 2000, plaintiff earned $8081.88 in wages and had a total of 194 days counted towards employment for purposes of wage calculation. This leads to an average weekly wage of $291.61.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On or about February 1, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, as a result of which he sustained injury to his back. N.C.G.S. § 97-2(6).
2. As a consequence of his injury by accident, plaintiff required reasonably necessary medical treatment, including the chiropractic treatment and the treatment rendered by Dr. Hoski. Defendants are responsible for payment for such reasonably necessary medical treatment. N.C.G.S. § 97-25.
3. Plaintiff has met his burden of showing that from September 9, 2000 through March 17, 2001, and from April 17, 2001 through August 9, 2001 that he was totally unable to earn wages which he was receiving at the time of his injury in the same or any other employment. Defendants have failed to meet their burden of producing evidence to rebut plaintiff's evidence in that it has not come forward with evidence to show that there were suitable jobs available and that plaintiff was capable of getting such a job taking into account both his physical and vocational limitations. Gayton v Gage Carolina Metals, Inc., 149 N.C. App. 346,560 S.E.2d 870 (2002).
4. As a consequence of his injury by accident, plaintiff has been unable to earn wages in the same or any other employment and is entitled to total disability benefits for the following periods: September 9, 2000 through March 17, 2001, and from April 17, 2001 through August 9, 2001. The Full Commission reserves the right to rule on the issue of further periods of plaintiff's disability after August 9, 2001 following the receipt of additional evidence. N.C.G.S. § 97-29.
5. Based upon the Form 22 submitted, plaintiff has an average weekly wage of $291.61, which yields a compensation rate of $194.42. N.C.G.S. § 97-2(5).
6. Defendants are entitled to a credit for unemployment benefits received by plaintiff between September 8, 2000 and March 18, 2001. N.C.G.S. § 97-42.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the deputy commissioner and enters the following:
 AWARD
1. Subject to a credit for unemployment benefits received and attorney's fee approved below, defendants shall pay plaintiff total disability compensation at the rate of $194.42 per week for the following periods: September 9, 2000 through March 17, 2001, and again from April 17, 2001 through August 9, 2001.
2. Defendants shall pay all medical expenses incurred by plaintiff due to his compensable injury by accident for reasonably necessary treatment rendered to effect a cure, provide relief, or lessen the period of plaintiff's disability.
3. A reasonable attorney's fee in the amount of twenty-five (25%) percent of the compensation awarded to plaintiff is hereby approved and shall be deducted from the lump sum due plaintiff and paid directly to his counsel. Thereafter, for any continuing benefits that may be paid, plaintiff's counsel shall receive every fourth check.
4. Defendants may provide appropriate vocational assistance to plaintiff to help him return to gainful employment. To the extent that any such assistance may be provided, plaintiff is hereby ORDERED to cooperate with the same.
5. Defendants shall pay the costs.
 ***********
It is further ORDERED that both parties shall have thirty (30) days from the date of filing of this Opinion and Award in which to submit evidence regarding plaintiff's disability status after August 9, 2001. Upon receipt of this additional evidence, the Full Commission shall amend this Opinion and Award to include findings regarding plaintiff's entitlement to additional workers' compensation benefits.
This the ___ day of August 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER