***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates, defendant-employer regularly employed three or more employees and an employee-employer relationship existed between plaintiff-employee and defendant-employer.
3. On all relevant dates, the Industrial Commission has jurisdiction over the subject matter of this case and the parties.
4. All parties are correctly designated and there is no question as to misjoinder or non-joinder of parties.
5. On all relevant dates, Harbor Specialty Insurance Company was the carrier on the risk.
6. On all relevant dates, plaintiff's average weekly wage is $280.00, yielding a compensation rate of $186.68.
7. At the hearing, the parties submitted the following exhibits
a. Plaintiff's medical records;
b. Industrial Commission forms, and;
c. Vocational rehabilitation reports.
8. Defendants admit that plaintiff sustained a work-place injury on 27 February 2000.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the deputy commissioner, plaintiff was twenty-eight (28) years of age. Plaintiff is an undocumented worker, and does not read or write English and speaks broken English. Plaintiff has a limited education and is unable to add or subtract.
2. On February 27, 2000, plaintiff was working as a janitor for defendant-employer. On that date, plaintiff sustained an admittedly compensable injury by accident when he fell down steel and cement stairs onto a cement floor. As a result of this incident, plaintiff sustained injuries to his back and hip.
3. Following the accident, plaintiff first sought medical treatment with Urgent Medical and Family Care Center. Medical records from this initial examination indicate that plaintiff reported having fallen down stairs, twisting his back. Diagnostic tests indicated possible spondylolysthesis at the L5 level as well as cystic changes. Plaintiff was diagnosed as having sustained a contusion on his low back and hip. With this initial diagnosis, plaintiff was assigned work restrictions and treated conservatively.
4. On March 28, 2000, plaintiff was referred to Dr. John Krege of Piedmont Orthopedic, who ordered a bone scan. According to Dr. Krege, both the bone scan and radiographs were normal. Dr. Krege noted that plaintiff was continuing to experience pain and that previously assigned light duty work restrictions were not being followed by defendant-employer. Dr. Krege medically excused plaintiff from work for two weeks, and referred him to physical therapy.
5. Plaintiff returned to Dr. Krege on April 28, 2000, and reported experiencing pain on the whole axil spine, from his neck down to the back. By May 12, 2000, plaintiff reported to Dr. Krege that he experienced pain in his neck when turning left and right, as well as pain in the lower cervical area. Cervical x-rays revealed a straightening of the normal cervical lordosis (lordosis is the normal curvature of the spine.)
6. Plaintiff returned again to Dr. Krege on June 1, 2000 and reported neck, rib, and chest pain. An MRI revealed degenerative changes at the C4-C5 level and a broad based disc bulge at the C3-C4 level. In his medical records, Dr. Krege indicates that he could not find a definitive cause for plaintiff's reports of pain. On June 21, 2000, plaintiff received a steroid injection ordered by Dr. Krege and was prescribed massage therapy. Following the injection, on July 19, 2000, Dr. Krege noted that plaintiff was moving well and exhibiting no signs of pain.
7. On September 14, 2000, plaintiff was examined by Dr. Frank Rowan, an orthopedic surgeon. Dr. Rowan diagnosed plaintiff as having a chronic cervical/thoracic strain and released him to return to sedentary work or to continue with work conditioning. Additionally, Dr. Rowan assigned plaintiff a 0% permanent partial impairment rating. In his medical records from that date, Dr. Rowan notes that he was "at a loss to explain his [plaintiff's] complaints."
8. Plaintiff subsequently underwent a Functional Capacity Evaluation, the results of which were interpreted by Dr. Rowan to reveal that plaintiff was capable of working in a sedentary capacity for an eight-hour day. Additionally, in his records from October 14, 2000, Dr. Rowan notes that plaintiff did not demonstrate any symptom exaggeration behavior. Although Dr. Rowan did assign a seven percent (7%) impairment rating to the whole body, this rating was not based upon North Carolina Industrial Commission guidelines.
9. On October 26, 2000, plaintiff was again examined by Dr. Krege who recommended that he seek treatment from a gastroenterologist for his abdominal problems and referred him for an MRI of the lumbar spine. As of October 26, 2000, plaintiff reported continuing to experience pain in his lower back and stiffness in his neck. The MRI revealed facet disease with ankylosis at the L4 and L5 levels. On November 14, 2000, Dr. Krege recommended that plaintiff undergo blood tests to definitively determine whether he had ankylosing spondylitis, and specifically noted that if he did, it was unrelated to the work incident of February 27, 2000. Ankylosing spondylitis is a progressive fusion of the spine starting at the pelvis that moves up the spine. After confirming the diagnosis of ankylosing spondylitis, Dr. Krege found that plaintiff was at maximum medical improvement with regard to his work injury if no additional trauma was found by a general surgeon. Additionally, Dr. Krege opined that plaintiff had sustained no permanent partial impairment rating as the result of his February 27, 2000 injury.
10. In response to Dr. Krege's request for a supplementary opinion regarding the possibility of additional trauma, defendants attempted to send plaintiff to a general surgeon, but he refused.
11. On January 5, 2001, plaintiff was examined by Dr. Edward Harrington, a Chiropractor. Based upon his examination, Dr. Harrington noted that plaintiff had decreased movement abilities that were accompanied by pain. Dr. Harrington further noted that plaintiff was only able to move his head from left to right approximately five degrees before experiencing pain. Dr. Harrington recommended that plaintiff undergo treatment of his cervical and thoracic spine, but this treatment was not approved by defendants.
12. On his own, plaintiff then sought treatment from Dr. Scott J. Spillmann, a physiatrist. Dr. Spillmann initially examined plaintiff on February 11, 2002, and opined that plaintiff was not at maximum medical improvement. Additionally, Dr. Spillmann referred plaintiff to a gastroenterologist and a rheumatologist for further evaluations.
13. On April 25, 2002, plaintiff was evaluated by Dr. Paul G. Sutej, a rheumatologist, who confirmed the diagnosis of ankylosing spondylitis.
14. On July 13, 2002, plaintiff returned to Dr. Spillmann, and reported continued neck pain with stiffness, and that neck movement made his symptoms worse. Dr. Spillmann also later determined that plaintiff's abdominal problems, specifically his rectal bleeding, was the result of hemorrhoids and not due to trauma or internal injuries from the work-place injury of February 27, 2000. Dr. Spillmann also referred plaintiff for an extensive work hardening program which was completed on November 19, 2002. The program results indicated that plaintiff was performing within the heavy physical demand classification as outlined by the U.S. Department of Labor's Dictionary of Occupational Titles.
15. Dr. Spillmann has released plaintiff from his care, finding that he reached maximum medical improvement for all conditions related to his work injury. Additionally, Dr. Spillmann released plaintiff to return to work without restrictions, and assigned a two percent (2%) permanent partial disability rating to the neck and a four percent (4%) permanent partial disability rating to the back.
16. For his medical conditions, plaintiff has also been examined by Dr. Rick Holmberg, a neurosurgeon, who also testified by deposition. In his deposition, Dr. Holmberg opined that plaintiff's ankylosing spondylitis was not related to the February 27, 2000 injury by accident, but that this condition could complicate the symptoms from the incident.
17. On the issue of whether there is a causal relationship between plaintiff's ankylosing spondylitis condition and his February 27, 2000 injury by accident, the undersigned give greater weight to the testimony and opinions of Dr. Spillmann than those of other medical professionals who have examined or treated plaintiff. Additionally, the undersigned find that Dr. Rick Holmberg should not be approved as plaintiff's authorized treating physician with regards to injuries sustained as the result of his injury by accident.
18. A labor market survey was completed which identified numerous jobs in plaintiff's geographical area which were within his restrictions and which plaintiff was capable of securing, many of which were available at the time the labor market survey was completed.
19. Dr. Spillman specifically reviewed and approved four of the job descriptions represented in the labor market survey as being appropriate for plaintiff.
20. The undersigned find as fact that suitable employment was available within plaintiff's restrictions.
21. As plaintiff is an undocumented worker, he was unable to secure employment which he would be able to perform based on his restrictions but for his status as an undocumented worker.
22. Plaintiff has failed to prove that he is unable to earn pre-injury wages, regardless of his status as an undocumented worker.
23. On February 27, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. As the direct and natural result of, and causally related to his February 27, 2000 injury by accident, plaintiff sustained a contusion to his lower back and hip and a cervical/thoracic strain.
24. Based upon the credible evidence of record, the undersigned find that ankylosing spondylitis is a condition that was not caused by plaintiff's compensable injury.
25. As the result of his February 27, 2000 injury by accident, plaintiff has sustained a (2%) permanent partial disability rating to the neck and a four percent (4%) permanent partial disability rating to the back.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On February 27, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As the direct and natural result of, and causally related to his February 27, 2000 injury by accident, plaintiff sustained a contusion to his lower back and hip and a cervical/thoracic strain. Id.
2. Plaintiff's ankylosing spondylitis condition is not the direct and natural result of, or causally related to his February 27, 2000 injury by accident. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff is now capable of returning to work, and defendants have identified positions which plaintiff would be capable of getting, but for his status as an undocumented worker. Gayton v. Gage, 149 N.C. App. 346,560 S.E.2d 870 (2002). Accordingly, Special Deputy Commissioner Kesler correctly terminated plaintiff's temporary total benefits as of September 9, 2003. Id.
4. As the result of his February 27, 2000 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred in treatment of the compensable injury, with these not including expenses associated with treatment by Dr. Holmberg or ongoing treatment ankylosing spondylitis. N.C. Gen. Stat. §§ 97-25; 97-25.1.
5. Defendants are entitled to a credit for overpayment for any temporary total disability paid after September 9, 2003. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 ORDER
1. Plaintiff's claim for ongoing temporary total disability benefits must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the 16th day of August 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER