***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Deluca.
 *********** MOTION FOR ADDITIONAL MEDICAL TREATMENT
On February 9, 2010, Plaintiff filed a motion for additional medical treatment. On February 17, 2010 Defendants filed a response to Plaintiff's motion. Plaintiff's motion was held in abeyance on March 12, 2010 until consideration by the Full Commission. In the discretion of *Page 2 
the Full Commission, Plaintiff's motion for additional medical treatment is DENIED for failure to comply withIndustrial Commission Rule 607.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter;
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act;
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties;
4. An employee-employer relationship existed between Plaintiff and Defendant-Employer on June 22, 2007; (Subject to Defendants' Issue 4)
5. Plaintiff's Average Weekly Wage for the fifty-two (52) weeks prior to June 22, 2007 was $323.80;
6. The Phoenix Insurance Company was the workers' compensation carrier on the risk for Defendant-Employer on the date of Plaintiff's injury by accident;
7. Plaintiff sustained a compensable injury by accident on June 22, 2007;
8. Defendants have accepted compensability of this claim by filing a Form 60 on May 12, 2008.
9. Plaintiff underwent treatment provided by Defendants with Forsyth Medical Center and Dr. Ramos and Dr. Tooke of Greensboro Orthopaedic and Sports Medicine Center; *Page 3 
10. Plaintiff has not worked for the Defendant-Employer since June 22, 2008;
11. Stipulated Exhibit 1 and Defendant's Exhibit 1 were admitted into the record.
12. Plaintiff's issues are as follows:
 a. Whether Plaintiff is temporarily totally disabled as a result of the injury by accident;
 b. Whether Plaintiff has reached maximum medical improvement from the injuries sustained in the accident which is the subject of this claim;
 c. Whether Plaintiff has suffered permanent partial impairment as a result of the injury by accident, and if so, to what extent;
 d. Whether Defendants should be ordered to provide additional medical treatment to give relief or effect a cure;
 e. Whether Defendants have identified suitable employment for Plaintiff;
 f. Whether Defendants should be ordered to provide rehabilitation services to Plaintiff.
13. Defendants' Issues are as follows:
 a. Whether Plaintiff is disabled as defined by North Carolina Workers' Compensation Act;
 b. If Plaintiff is disabled (to the extent she cannot return to work within her present restrictions), is her disability related to her compensable injury by accident or her legal status;
 c. If Plaintiff's inability to return to suitable employment is related to her legal status, have Defendants adequately made a showing pursuant to *Page 4 
Gayton v. Gage Carolina Metals, Inc., 149 N.C. App. 346, 540 S.E.2d 870 (2002) to terminate benefits;
 d. Did Plaintiff procure her employment under false pretense, therefore making her employment legally void?
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born in Mexico on October 10, 1969, is Spanish-speaking, and has a sixth grade education. Plaintiff came to the United States in 1994. From 1994 to 2002 Plaintiff worked in hosiery putting socks into plastic sleeves. From 2002 to 2004, Plaintiff worked at a restaurant as a skilled cook making various dishes for a local Greek restaurant.
2. After hearing from a friend that Hardee's was hiring in Kernersville, Plaintiff applied for and received a job. Plaintiff signed initial employment papers for Hardee's and provided a false social security number. Plaintiff has no legal status in the United States.
3. On June 22, 2007, Plaintiff was working for Employer-Defendant as a cook when she slipped on a wet floor and hurt her back in a fall. The claim was accepted as compensable by filing an Industrial Commission Form 60 and all appropriate wage and medical benefits have been paid to this point.
4. The Plaintiff underwent treatment provided by Defendants with Forsyth Medical Center Emergency Department. *Page 5 
5. On September 4, 2007, Plaintiff treated with Dr. Richard Ramos of Greensboro Orthopaedic and Sports Medicine Center. Dr. Ramos assigned work restrictions of "No lifting over ten pounds, no bending/stooping/squatting, [and] no prolonged sitting/standing."
6. Plaintiff saw Dr. S. Michael Tooke for a neurosurgical consultation on November 5, 2007. Plaintiff provided a history to Dr. Tooke that the onset of her back pain occurred on June 22, 2007 and that she had fallen at work and landed on her left side. On physical exam, Dr. Tooke found that Plaintiff was tender at the L4-5 level and at L5-S1 and had some minor decrease in sensation in the dorsum of the left foot. She had a straight leg raising of 70 degrees bilaterally but on the left side it caused pain down into her leg. Dr. Tooke reviewed x-rays which showed some degenerative changes at L4-5 and narrowing of the disc space and spur formation at L5-S1 and also looked at cervical spine radiographs which appeared normal. An MRI of the lumbar spine showed a degenerative L4-5 disc with an annular tear and small central disc protrusion and a broad disc protrusion at L5-S1 more prominent on the right and that there was some displacement of the L5 nerve root. Dr. Tooke also noted that there was some disc degeneration at T12-L1. Dr. Tooke diagnosed lumbar disc degeneration with central protrusions and left foramenal disc protrusion at L5-S1 as well as T12-L1 disc degeneration. Dr. Tooke opined that the left leg pain was probably attributable to the disc herniation at L5-S1 and that the back pain could be coming from L4-5 or L5-S1.
7. Dr. Tooke noted that Plaintiff was temporarily totally disabled on November 5, 2007 and instructed her to continue with conservative treatment.
8. On December 20, 2007, the Plaintiff returned to Dr. Tooke and reported 50% axial back pain and left leg pain which was unchanged. Dr. Tooke recommended a discogram. *Page 6 
9. Plaintiff participated in a functional capacity evaluation (FCE) on January 4, 2008 during which Plaintiff was found to be able to work in the sedentary/light demand level.
10. Plaintiff returned to Dr. Tooke on January 7, 2008. Dr. Tooke released Plaintiff at maximum medical improvement and assigned a seven percent permanent partial impairment rating to his back.
11. Dr. Tooke assigned permanent work restrictions of maximum lifting ten pounds waist to overhead occasionally, no bending, no stooping, occasional standing and sitting, climbing limited to stairs, maximum pushing and pulling of ten pounds, no kneeling, no squatting, light use of extremities only, and walking limited to occasionally.
12. In his deposition, when asked if Plaintiff would be expected to have surgery for this current condition, Dr. Tooke testified, "it's not anticipated she'll require surgery and I personally would not welcome her back for surgery with any glee. I can tell you just because I don't think she'll do well in surgery."
13. Dr. Tooke opined that Plaintiff should be able to work and is not permanently and totally disabled. When asked to elaborate, Dr. Tooke stated, "Well, I mean she obviously is capable of doing something." Dr. Tooke opined that Plaintiff is capable of doing work that involves alternating positions and work that does not involve bending and lifting more than ten pounds.
14. Dr. Tooke was asked, "if an employer had a position where she would be able to sit on a stool when needed or be able to move about when needed, would that change your opinion?" Dr. Tooke answered, "As long as she's not being required to carry buckets of water or big tubs of food that weigh 10, 20, or 25 pounds, I would think that she would be able to do that kind of work." *Page 7 
15. Dr. Tooke recommended that Plaintiff try a job if there was an opportunity in the job market within her restrictions. Plaintiff presented a job log that showed efforts she has made to seek employment. Plaintiff listed jobs from various fast food corporations such as Taco Bell, Bojangle's, Burger King, Wendy's, and others. Plaintiff did not apply to any of the local Mexican restaurants.
16. Anthony Enoch, a vocational rehabilitation professional, did a labor market survey on December 6, 2008 to determine what jobs Plaintiff could do, but for her being illegally in the United States. The report shows, and Mr. Enoch testified, that taking into account Plaintiff's physical restrictions and educational requirements, he was able to find three jobs that may suit her. The first job was as a Mexican prep chef, which is consistent with the testimony taken from Plaintiff that she likes to cook and that she has significant history doing it. The second job was as a greeter at Wal-Mart, and the third job was as a cashier at Home Depot.
17. Mr. Enoch testified that he was certain that Plaintiff would be able to get a job at or above her pre-injury wages but for her legal status.
18. Hardee's human resources representative Bob Miller oversees the human resources department for a region spanning from approximately Greensboro, North Carolina to Greenville, South Carolina that incorporates about 100 stores. Mr. Miller said he heard all of the testimony about Plaintiff's restrictions, and he believes she could work at Hardee's in her current capacity. He said she could be a cook and that she would be able to sit and stand as needed and use a stool for a lot of her prep work. He said that out of the 100 stores he oversees, approximately 20 stores have workers with similar restrictions. He testified that this is an accommodation that he would make regularly and that Hardee's had made before 2004 and would continue to make in the future. Although Hardee's does not advertise this job with this *Page 8 
accommodation, his statement was that if a person came in to apply for this job, this is an accommodation they would make if the person were otherwise qualified.
19. The Full Commission finds as fact that Plaintiff, if not for her illegal status in the United States, would be able to work either at Hardee's or at one of the jobs listed by Mr. Enoch based on the description of her condition by Dr. Tooke, the nature of the jobs, and Plaintiff's skill in the kitchen.
20. The Full Commission has considered the testimony of Stephen Carpenter who prepared a vocational rehabilitation report on Plaintiff. However, the Full Commission finds that Mr. Carpenter's evaluation and report was incomplete and gives little weight to Mr. Carpenter's report. The Full Commission gives greater weight to the report and testimony by Mr. Enoch.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 22, 2007, Plaintiff sustained an injury by accident arising out of and in the course of her employment, which Defendants admitted on a Form 60 filed on May 12, 2008. N.C. Gen. Stat. § 97-2(6). However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with Plaintiff. Sims v. Charmes/Arby'sRoast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
2. In order to meet the burden of proving continuing disability, Plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial *Page 9 
burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993). The greater weight of the credible evidence shows that Plaintiff has failed to meet her burden of showing that she is not able to earn wages, that she has been unsuccessful at obtaining employment or that it would be futile to do so. Therefore, Plaintiff has failed to prove disability after January 7, 2008. Id.
3. Assuming arguendo that Plaintiff has met her burden of proving disability, Defendants have provided evidence sufficient to rebut Plaintiff's claim of total disability after January 7, 2008 in that Defendants have produced sufficient evidence that suitable jobs are available for Plaintiff and that Plaintiff is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
4. In Gayton v. Gage Carolina Metals, Inc.,149 N.C. App. 346, 560 S.E.2d 870 (2002), the Court of Appeals held that employers bore the burden of proving that an undocumented worker could return to work but for his undocumented status. In this case, although plaintiff did experience a reduction in her physical abilities, Dr. Tooke released Plaintiff to return to work with restrictions. Using those restrictions, Hardee's and Mr. Enoch identified numerous jobs within Plaintiff's physical abilities that were within a reasonable *Page 10 
distance from Plaintiff's residence. Burwell v. Winn-DixieRaleigh, Inc., 114 N.C.App. 69, 441 S.E.2d 145 (1994). Thus, defendants met their burden of proving that after January 7, 2008, plaintiff could return to work but for her undocumented status. Gayton v. Gage Carolina Metals, Inc.,supra; Russell v. Lowes Product Distribution, supra.
5. As a result of her injury by accident, plaintiff was disabled and is entitled to temporary total disability benefits at a rate of $215.88 beginning June 22, 2007 and ending January 7, 2008. N.C. Gen. Stat. § 97-29. Defendants are entitled to a credit for any over payment of compensation already paid plaintiff.
6. As a result of her injury by accident on June 22, 2007, Plaintiff sustained permanent injuries to her back. As a result of her injuries, plaintiff is entitled to a permanent partial disability rating of seven percent (7%) to her back. N.C. Gen. Stat. § 97-31(23). Defendants are entitled to a credit for any compensation already paid to Plaintiff after January 7, 2008.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a credit for compensation already paid, Defendants shall pay Plaintiff temporary total disability benefits at a rate of $215.88 per week beginning June 22, 2007 and ending January 7, 2008.
2. Subject to a credit for temporary total disability benefits paid after January 7, 2008, Defendants shall pay Plaintiff permanent partial disability compensation for the seven percent (7%) impairment to her back at the rate of $215.88 for 21 weeks. *Page 11 
3. A reasonable attorney fee of 25% of any compensation due and not yet paid to Plaintiff under paragraphs 1 and 2 of this Award is approved for Plaintiff's counsel and shall be paid directly to Plaintiff's counsel.
4. Defendants shall bear the costs including an expert witness fee of $400.00 to Dr. Carpenter.
This the 7th day of July 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1