*********** *Page 2 
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter and over the parties to this action based on the filing of a Form 18 and Form 60.
2. On or about January 20, 2006, an employment relationship existed between defendant-employer and plaintiff, and, at that time, defendant-carrier provided defendant-employer's workers' compensation insurance.
3. Plaintiff's average weekly wage is $700.48, which yields a compensation rate of $467.01.
4. Plaintiff has received ongoing total disability benefits since his January 20, 2006 injury and he continues to receive those benefits.
5. The following exhibits were admitted into evidence at the Deputy Commissioner's hearing:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Industrial Commission Forms and Filings, Personnel Records, and Medical Records
6. The issue before the Full Commission is whether plaintiff is entitled to ongoing temporary total disability compensation.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. As of the date of the Deputy Commissioner's hearing, plaintiff was 34 years old. He is a Hispanic male who has been living in the United States for ten years. English is his second language. Plaintiff testified that he is able to read some English but that he does not understand everything he reads. He also testified that he completed two Form 18's without assistance. Plaintiff also completed a job search log in English, as well as numerous job applications.
2. Plaintiff sustained an admittedly compensable specific traumatic incident to his back on January 20, 2006 when he picked up a sewer machine weighing over 100 pounds. At the time of his injury, plaintiff earned $18.00 per hour as a plumber. Plaintiff previously worked as a pipe layer and maintenance worker for defendant-employer. Plaintiff's other work history involves primarily construction jobs.
3. On February 28, 2006, plaintiff was seen at Doctor's Urgent Care and reported that his injury occurred on January 28, 2006 when he lifted a 100-pound sewer machine. Plaintiff was diagnosed with a lumbar strain and was doing well until he lifted 60 pounds at physical therapy on March 13, 2006.
4. Defendants accepted the claim via a Form 60 on March 31, 2006.
5. On April 29, 2006, plaintiff underwent an MRI of his lumbar spine, which showed a left paramedian/lateral herniated disc at L4-5 contributing to left neural foraminal stenosis and a small herniated disc at the L5 transitional level. Following the MRI, plaintiff was referred to a neurosurgeon.
6. Plaintiff saw Dr. William F. Lestini on May 12, 2006. Dr. Lestini diagnosed plaintiff with lumbar disc desiccation, facet degenerative changes and herniated nucleus pulposus *Page 4 
at L4-5 and L5-S1. He recommended epidural steroid injections. Dr. Lestini also noted that plaintiff speaks English very well and expresses understanding of English.
7. On June 16, 2006, plaintiff saw Dr. Gary Smoot for steroid injections. On June 28, 2006, plaintiff returned and reported no relief from the injections and Dr. Smoot referred plaintiff back to Dr. Lestini.
8. On July 6, 2006, Dr. Lestini recommended a work conditioning program for plaintiff. Plaintiff attended work conditioning from June 12, 2006 through August 7, 2006.
9. Plaintiff returned to Dr. Lestini on August 8, 2006. Dr. Lestini recommended a Functional Capacity Evaluation (FCE) based on plaintiff's preference against surgery. He released plaintiff to light-duty work for four hours daily with hours increasing over time.
10. On October 10, 2006, plaintiff underwent the FCE. The FCE stated that the test results are invalid due to self-limiting and inconsistent effort by plaintiff. Specifically, plaintiff failed eight of nine validity tests. In addition, the FCE recommended that permanent restrictions should not be based on the results of the FCE due to limited evidence of consistent impairment.
11. On November 21, 2006, plaintiff returned to Dr. Lestini. Dr. Lestini reviewed plaintiff's FCE and noted that while the FCE placed plaintiff in the light-medium capacity, self-limiting behavior would tend to underestimate plaintiff's abilities. Thus, Dr. Lestini released plaintiff with a medium-duty restriction, a 20 pound lifting restriction, and a 5% permanent partial impairment rating to his back. 12. Based upon his restrictions, plaintiff was unable to return to work for defendant-employer and has been receiving ongoing temporary total disability compensation. 13. On November 16, 2006, defendants submitted a motion requesting they be allowed to submit surveillance reports and videos to Dr. Lestini. Defendants' motion was *Page 5 
granted on January 8, 2007. The surveillance of plaintiff suggests that he is capable of significant physical labor. Plaintiff is shown operating a front-end loader, shoveling wheelbarrows of dirt and moving them, and crouching and using construction tools to build or repair a shed.
14. Dr. Lestini viewed the surveillance materials and determined that plaintiff could work at a medium level. This determination was the same as the assessment Dr. Lestini made prior to viewing the surveillance video.
15. On April 11, 2007, Gina Vieceli, a vocational rehabilitation professional with Page Rehabilitation Services, conducted an initial vocational assessment with plaintiff at his attorney's office, in the presence of an interpreter. Plaintiff stated that he is not lawfully documented to work in the United States.
16. Because plaintiff is an undocumented worker, Ms. Vieceli is unable to contact potential employers directly on behalf of plaintiff. Therefore, Ms. Vieceli conducted a labor market survey that was completed on July 15, 2007. The survey identified several positions that Ms. Vieceli believed plaintiff would be able to perform based upon his restrictions. The identified jobs paid a rate of $8.00 to $12.79 per hour.
17. Defendants filed a Form 24 application to terminate plaintiff's compensation arguing that but for plaintiff's legal status, he would be capable of obtaining one of the jobs described in the labor market survey. On September 13, 2007, Special Deputy Commissioner Elizabeth M. "Lacy" Maddox denied defendants' Form 24 application.
18. The labor market survey was revised by Ms. Vieceli on October 15, 2007. The revised survey identified several additional jobs paying a rate of $9.75 to $14.90 per hour. Defendants filed a second Form 24 on October 22, 2007. On December 5, 2007, Special Deputy *Page 6 
Commissioner Maddox considered the revised labor market survey and again denied defendants' Form 24 application.
19. The revised labor market survey showed that plaintiff's work history involves plumbing, maintenance repair, and pipe laying. The survey included two examples of positions in these fields; one paid up to 62% of plaintiff's pre-injury wage, while the other did not provide wage information. The survey also indentified two examples of truck driver positions. The first did not provide wage information, and the second paid 67% of plaintiff's pre-injury wage.
20. The revised labor market survey also identified three possible entry-level positions. These positions paid 54%, 61%, and 83% of plaintiff's pre-injury wage. The position on the high end of the possible pay scale, a parking attendant for the City of Chapel Hill, requires "conversational" English skills according to Ms. Vieceli. During her deposition, Ms. Vieceli testified that plaintiff told her he could understand basic conversation in English, but that he had difficulty with reading comprehension. In addition, Dr. Lestini previously noted that plaintiff speaks English very well and expresses understanding of English. Thus, the Commission finds that plaintiff's English skills are sufficient to perform the parking attendant position and other jobs within a reasonable distance from plaintiff's residence.
21. As of the October 15, 2007 revised labor market study, defendants met their burden of proving plaintiff had wage earning capacity. Plaintiff was capable of earning some wages but for his undocumented status. Thus, the Commission finds that the revised labor market survey identified several job opportunities that were within plaintiff's restrictions, suitable for plaintiff and that would restore his pre-injury wage earning capacity.
 *********** *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 20, 2006, plaintiff sustained an injury by accident as a result of a specific traumatic incident to his back arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted the compensability of plaintiff's injury by accident by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001).
3. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden *Page 8 
then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra. Assuming plaintiff has met his burden of proving continuing disability under Russell, defendants have provided evidence sufficient to rebut plaintiff's claim of total disability.
4. In Gayton v. Gage Carolina Metals, Inc., 149 N.C. App. 346,560 S.E.2d 870 (2002), the Court of Appeals held that employers bore the burden of proving that an undocumented worker could return to work but for his undocumented status. Here, although plaintiff did experience a reduction in his physical abilities, Dr. Lestini released plaintiff to return to medium duty work with a 20 pound lifting restriction only. Using those medium duty restrictions, Ms. Vieceli identified numerous jobs within plaintiff's physical abilities that were within a reasonable distance from plaintiff's residence. Burwell v. Winn-Dixie Raleigh,Inc., 114 N.C.App. 69, 441 S.E.2d 145 (1994). Some of the jobs paid lower wages than plaintiff's pre-injury wage; however, lower wages are only one factor to be considered in determining whether a job is suitable. Foster v. US Airways, Inc., 149 N.C.App. 913, 563 S.E.2d 235
(2002); Dixon v. City of Durham, 128 N.C.App. 501, 495 S.E.2d 380
(1998). Additionally, plaintiff is able to speak conversational English, which would qualify him for some of the jobs. Plaintiff's English skills would not make obtaining work futile. Thus, defendants met their burden of proving that after October 15, 2007, plaintiff could return to work but for his undocumented status. Gayton v. Gage Carolina Metals, Inc.,supra; Russell v. Lowes Product Distribution, supra.
5. As a result of his injury by accident, plaintiff was disabled and is entitled to temporary total disability benefits at a rate of $467.01 beginning January 20, 2006 and ending *Page 9 
October 15, 2007. N.C. Gen. Stat. § 97-29. Defendants are entitled to a credit for any compensation already paid plaintiff.
6. As a result of his injury by accident on January 20, 2006, plaintiff sustained permanent injuries to his back. As a result of his injuries, plaintiff is entitled to a permanent partial disability rating of five percent to his back. N.C. Gen. Stat. § 97-31(23). Defendants are entitled to a credit for any compensation already paid plaintiff.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a credit for compensation already paid, defendants shall pay plaintiff temporary total disability benefits at a rate of $467.01 beginning January 20, 2006 and ending October 15, 2007.
2. Subject to a credit for compensation already paid, defendants shall pay plaintiff permanent partial disability compensation for the five percent impairment to his back at the rate of $467.01 for 15 weeks.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This 19th day of December, 2008.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER