***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction over this matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. The parties are properly designated, and there is no question as to the joinder or the non-joinder of any party.
4. On July 11, 2005, Plaintiff alleges to have sustained a compensable work injury to his left arm when he cut it with a chainsaw.
5. On December 28, 2006, Plaintiff alleges to have sustained a compensable work injury to his back.
6. At the time of the alleged work injury, Plaintiff's average weekly wage was $440.00, yielding a compensation rate of $293.35.
7. Plaintiff alleges to have been out of work as a result of his alleged work injury by accident from December 28, 2006 through the present.
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit Three: Plaintiff's medical records;
 d. Stipulated Exhibit Four: Additional medical records of Plaintiff;
 e. Stipulated Exhibit Five: Discovery responses.
 *********** *Page 3 ISSUES
The issues presented by Plaintiff and Defendants on appeal are:
 1. Whether Plaintiff's neck condition is causally related to his compensable injury?
 2. Whether Plaintiff is permanently and totally disabled?
 3. Whether Plaintiff is entitled to benefits for attendant care following his surgeries?
 4. Whether Plaintiff is entitled to reinstatement of vocational training?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 37 years old, with a date of birth of August 26, 1973. Plaintiff is originally from Mexico, but moved to the United States in either 1997 or 1998, and currently resides in Sparta, North Carolina. Plaintiff completed high school and some college course work while still living in Mexico. Spanish is Plaintiff's primary language, and he continues to have difficulty speaking, reading, and writing in English.
2. Plaintiff's employment history includes factory/assembly work in Mexico, and then fencing/landscaping in the United States. In 2005, Plaintiff began working for Defendant-Employer as a landscaper. Plaintiff's average weekly wage with Defendant-Employer was $440.00, yielding a compensation rate of $293.35.
3. On July 11, 2005, Plaintiff was working for Defendant-Employer as a landscaper when he sustained a left arm laceration from a chainsaw while trimming a tree. Plaintiff sought medical treatment for his July 11, 2005 work injury and remained out of work until his treating physician released him to return to work without restrictions. Defendants did not appeal from *Page 4 
the Deputy Commissioner's award of medical compensation for this injury and this matter has not been otherwise raised as an issue on appeal.
4. On December 28, 2006, Plaintiff was attempting to lift and install a fence post as requested by his supervisor when he felt a sharp pain in his lower back. Plaintiff reported his back injury to his supervisor shortly after it occurred, but continued to work and completed his shift as requested by his supervisor.
5. On January 1, 2007, Plaintiff's next scheduled work day, his back pain worsened to the point that he could not dress himself and had difficulty walking. Plaintiff called his supervisor and asked if he would take him to the hospital. Plaintiff's supervisor drove him to the emergency department at Alleghany Memorial Hospital in Sparta, North Carolina, where he received a diagnosis of a herniated disc and an occult boney abnormality, and instructions to remain out of work for three days.
6. On January 2, 2007, Plaintiff presented to Dr. Mary-Emma Holleman Beres, a family medicine specialist. Dr. Beres prescribed medication and physical therapy, and continued to keep Plaintiff out of work. On January 24, 2007, Dr. Beres released Plaintiff to return to light-duty work and gave him restrictions of no lifting more than 30 pounds and no stooping or twisting. However, it appears from the evidence that Defendant-Employer had no light-duty work available for Plaintiff within his restrictions. On February 21, 2007, Dr. Beres noted that Plaintiff's symptoms were better, and so she released him to return to full-duty work on a trial basis for two weeks, and gave him a 100 pound lifting restriction.
7. On February 22, 2007, Defendants admitted the compensability of Plaintiff's December 28, 2006 work injury via a Form 60 and began paying temporary total disability compensation as of January 11, 2007. Defendants described Plaintiff's December 28, 2006 work *Page 5 
injury on the Form 60 as a strain of his "lower back when he lifted a post at work." Thereafter, Defendants began authorizing medical treatment for Plaintiff's December 28, 2006 work injury, and Plaintiff attempted to return to work.
8. On February 26, 2007, Dr. Beres noted that upon Plaintiff's return to work, he had pain with twisting activities, but that he "wants to work." Plaintiff reported continued left lower back pain, but no radicular pain or numbness. Dr. Beres recommended a lumbar brace, the use of safe lifting practices, and no further twisting activities.
9. Because Plaintiff continued to experience problems with working due to lower back pain upon returning to full-duty work, especially when performing lifting and twisting activities, Defendant-Employer terminated his employment sometime at the end of February 2007. According to Dr. Beres' March 7, 2007 note, Plaintiff applied for employment with a company named Magnolia. However, Plaintiff was unsuccessful in obtaining employment due to the condition of his lower back.
10. At Plaintiff's March 7, 2007 visit with Dr. Beres, she changed his work restrictions to allow standing two hours at a time, climbing ladders, unlimited walking, driving, and a 40 pound lifting restriction. On March 22, 2007, Dr. Beres noted that Plaintiff's recent magnetic resonance imaging (MRI) revealed a right para-central disc extrusion at the L4-L5 level of the spine with a small, inferiorly sequestered fragment, and a small central disc protrusion at the L5-S1 level of the spine. Based upon Plaintiff's MRI results and his worsening back pain, Dr. Beres referred him to Dr. Stephen Allen Grubb, an orthopaedist.
11. On March 23, 2007, Plaintiff presented to Dr. Grubb with complaints of lower back and bilateral thigh pain, as well as left foot numbness. A physical examination revealed decreased range of motion and a positive straight-leg raise at 90 degrees. Dr. Grubb diagnosed *Page 6 
Plaintiff with lumbar degenerative disc disease and discogenic lumbar pain, recommended continued physical therapy, and took Plaintiff out of work. As a result of Dr. Grubb's decision to take Plaintiff out of work, Defendants reinstated Plaintiff's temporary total disability compensation effective March 23, 2007.
12. On April 27, 2007, Plaintiff returned to Dr. Grubb, who noted that Plaintiff's lower back and bilateral thigh pain was improving. However, Plaintiff continued to have left foot numbness and a new complaint of left arm weakness. Dr. Grubb was of the opinion that with appropriate physical therapy, Plaintiff's disc was reducible, and he could return to full-duty work in six weeks.
13. Over the next few months, Plaintiff continued to see Dr. Grubb, during which time his lower back pain and lower extremity numbness began to worsen. On September 19, 2007, a discogram revealed annular tears at the L4-L5 and L5-S1 levels of the spine. Dr. Grubb recommended surgery based upon the findings of the discogram and Plaintiff's worsening pain.
14. On October 30, 2007, Plaintiff underwent a multi-level fusion and decompression surgery at the L4-L5 and L5-S1 levels of the spine performed by Dr. Grubb. Although Plaintiff continued to have some numbness in his left lower extremity post-operatively, his back pain did diminish some in severity. Because Plaintiff was unable to perform his activities of daily living or otherwise care for himself post-operatively, his wife took a total of four weeks off from her employment to provide care for him.
15. Plaintiff continued to see Dr. Grubb throughout the remainder of 2007 and in 2008. According to Plaintiff, he began to experience a gradual onset of neck pain following his October 30, 2007 surgery. However, there is no documentation in Plaintiff's medical records of *Page 7 
cervical or neck complaints until August 14, 2008, when Dr. Grubb diagnosed Plaintiff with cervical degenerative disc disease and discogenic cervical pain.
16. Plaintiff's lower back and lower extremity symptoms did not improve following his October 30, 2007 surgery as anticipated, so Dr. Grubb recommended additional surgery. On January 19, 2009, Plaintiff underwent another surgery to remove the hardware from the October 30, 2007 surgery and explore the fusion to ensure that it was solid. According to Dr. Grubb, Plaintiff needed this surgery because he had persistent pain and no other identifiable source of pain. Plaintiff's wife took a total of three weeks off from her employment to assist him with his activities of daily living and other post-operative care.
17. Following Plaintiff's January 19, 2009 surgery, Defendants authorized Plaintiff to take English as a second language classes to assist him in locating suitable employment. Plaintiff complied with Defendants' efforts to assist him in locating suitable employment and attended the English as a second language classes. In addition, Plaintiff made efforts to locate suitable employment after Dr. Grubb released him to return to work in a modified, temporary capacity on March 23, 2009.
18. On June 11, 2009, Dr. Grubb released Plaintiff to return to full-duty work with no restrictions. At the time, Defendants were paying Plaintiff temporary total disability compensation. Plaintiff remained unemployed but was searching for suitable employment. In response to Dr. Grubb's release of Plaintiff to full-duty work, on July 27, 2009, Defendants filed a Form 24 seeking to terminate or suspend his workers' compensation benefits. On September 1, 2009, Special Deputy Commissioner Emily M. Baucom filed an Order approving Defendants' Form 24 and terminating Plaintiff's workers' compensation benefits effective July 28, 2009. *Page 8 
19. On November 6, 2009, Plaintiff returned to Dr. Grubb with complaints of more pain and less range of motion. Because of Plaintiff's ongoing pain complaints, history of multi-level fusion surgery, and continued inability to locate suitable employment, Dr. Grubb reconsidered his decision on June 11, 2009 to release Plaintiff to return to full-duty work with no restrictions. Dr. Grubb concluded that Plaintiff was at maximum medical improvement, assigned a 15 percent permanent partial disability rating to his back, and released him to return to work with the following restrictions: may lift floor to waist up to 25 pounds; no repetitive lifting floor to waist over 15 pounds; may lift waist to chest up to 50 pounds; no repetitive lifting waist to chest over 25 pounds; may carry up to 50 pounds; no repetitive carrying over 25 pounds; may push/pull up to 50 pounds; no repetitive pushing/pulling over 25 pounds; may perform overhead working/lifting up to 25 pounds; no repetitive overhead work/lifting over 15 pounds; and no sitting, standing, or walking more than two hours at one time or four hours per day, but may do any combination of sitting, standing, or walking eight hours per day, five days per week. Dr. Grubb was of the opinion that work restrictions were appropriate for Plaintiff beginning on June 11, 2009 and going forward.
20. At Dr. Beres' deposition, she opined to a reasonable degree of medical certainty, and the Full Commission finds as fact, that Plaintiff's December 28, 2006 work injury exacerbated the pre-existing right para-central disc extrusion at the L4-L5 level of the spine and the pre-existing protrusion at the L5-S1 level of the spine seen on the March 2007 MRI. Dr. Beres based her opinions upon the fact that she had been treating Plaintiff since 2001 for medical issues unrelated to his back, and he never missed any work from 2001 through December 28, 2006 due to any back complaints, and that Plaintiff worked in fencing and landscaping from *Page 9 
1998 through the date of his work injury without any limitations due to his back. The Full Commission gives great weight to the opinion testimony of Dr. Beres.
21. At Dr. Grubb's deposition, he opined that Plaintiff's December 28, 2006 work injury more likely than not aggravated his lumbar degenerative disc disease, assuming that Plaintiff did not have any limitations on his back, was able to work without problems, had a sudden onset of back pain on the date of the work injury, and continued to have pain since that time. Defendants have admitted Plaintiff's lumbar injury. However, Dr. Grubb was of the opinion, and the Full Commission finds as fact, that Plaintiff's December 28, 2006 work injury did not cause his cervical degenerative disc disease and discogenic cervical pain. Additionally, Plaintiff's cervical/neck condition is not a direct and natural consequence of his compensable injuries.
22. The Full Commission finds as fact that Dr. Grubb's testimony establishes that attendant care for Plaintiff was reasonably required to effect a cure, to give relief, and/or to lessen his period of disability. With respect to the issue of attendant care, Dr. Grubb opined that it was appropriate for Plaintiff to have received such care on a gradually decreasing basis for four to six weeks following each of his two surgeries. Although Dr. Grubb did not specifically prescribe attendant care for Plaintiff following either his October 30, 2007 or January 19, 2009 surgeries, he indicated that with patients similar to Plaintiff, he would typically prescribe 24 hour care for the first two weeks and decrease that time as needed over the next four to six weeks. The Full Commission gives great weight to the opinion testimony of Dr. Grubb on this issue.
23. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is entitled to compensation for the attendant care services provided to Plaintiff by his wife. At the time of Plaintiff's surgeries, his wife was working 40 hours per week and earning *Page 10 
$8.00 per hour. As a result of Plaintiff's need for attendant care to assist him in performing necessary activities of daily living, Plaintiff's wife took leave from work for four weeks after the first surgery and three weeks after the second surgery. The Full Commission finds that the attendant care provided to Plaintiff by his wife was reasonably required to either effect a cure, to give relief, and/or to lessen Plaintiff's period of disability. Plaintiff is only seeking compensation at the rate of $8.00 per hour for the eight hours per day, five days per week for seven weeks that his wife could not work because he needed her (or someone else) to provide attendant care services to him. The amount of compensation Plaintiff is seeking for the attendant care provided by his wife is reasonable.
24. The Full Commission finds, based upon the greater weight of the evidence, Plaintiff is at maximum medical improvement with respect to his compensable work injuries. The medical treatment Plaintiff received from Dr. Beres, Dr. Grubb, and other authorized treating physicians was reasonably required to effect a cure, to give relief, and/or to lessen his period of disability. Dr. Grubb felt Plaintiff will need lifetime medical care for his back, but with vocational retraining he should be able to return to gainful employment.
25. Defendants began paying Plaintiff temporary total disability compensation via a Form 60, effective January 11, 2007, and Plaintiff returned to work for Defendant-Employer on a trial basis on or about February 22, 2007. After Defendant-Employer terminated Plaintiff's employment at the end of February 2007, he did not return to work anywhere else, although he made efforts to search for suitable employment. When Dr. Grubb took Plaintiff out of work on March 23, 2007, Defendants reinstated Plaintiff's temporary total disability compensation effective that same day and continued paying such benefits until September 1, 2009, when Special Deputy Commissioner Baucom approved Defendants' Form 24, effective July 28, 2009, *Page 11 
based upon Dr. Grubb's June 11, 2009 release of Plaintiff to return to work full-duty with no restrictions.
26. Dr. Grubb opined at his deposition that his June 11, 2009 release of Plaintiff to return to work full-duty with no restrictions was in hindsight premature, and that Plaintiff should have had the same permanent work restrictions he gave on November 6, 2009. Therefore, the Order approving Defendants' Form 24 application is vacated.
27. Defendants raised for the first time on appeal the issue of whether Plaintiff is permanently and totally disabled. However, based upon the Pre-Trial Agreement, Plaintiff is seeking ongoing temporary total disability and the permanent and total disability issue was not a part of the hearing before the Deputy Commissioner and is not being addressed on appeal. Defendants did not assign error to the Deputy Commissioner's Conclusion of Law number two which stated: "[a]s a result of the pain in his lower back associated with his compensable condition, Plaintiff has been unable to earn wages from the date of his injury to the present and continuing." Thus, it appears that the issue of Plaintiff's ongoing disability has been determined.
28. Assuming the issue of Plaintiff's ongoing disability is before the Full Commission, since Defendants did appeal Award number four, Plaintiff proved that he continues to be unable to locate suitable employment within the permanent work restrictions issued by Dr. Grubb, despite his reasonable efforts to seek such employment. The Full Commission finds credible Plaintiff's testimony concerning his continued efforts to locate suitable employment within his restrictions. Thus, Plaintiff met his burden of proving entitlement to continuing temporary total disability compensation from the date of his December 28, 2006 work injury through the present and continuing, except for the brief period Defendants would be entitled to a credit for earnings after Plaintiff attempted to return to work. Defendants did not present *Page 12 
sufficient evidence showing that there are suitable jobs Plaintiff is capable of getting but for his illegal alien status.
29. Plaintiff is seeking to have Defendants resume vocational services, including English as a second language classes. Although some vocational rehabilitation services may be utilized by Defendants to assist an illegal alien in improving his employability, the Full Commission is not persuaded that Defendants should be required to provide such services to Plaintiff in this case.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On December 28, 2006, Plaintiff sustained an admittedly compensable injury to his lower back as a direct result of a specific traumatic incident of the work assigned to him by Defendant-Employer. N.C. Gen. Stat. § 97-2(6) (2010).
2. Plaintiff failed to meet his burden of proving that his cervical/neck condition is a direct and natural consequence of his July 11, 2005 or December 28, 2006 work injuries, or that such work injuries either caused, contributed to, or aggravated his cervical/neck condition. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000); Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983).
3. Plaintiff has proven that the medical treatment he received and continues to need with respect to his December 28, 2006 work injury was reasonably necessary in order to effect a cure, to give relief, and/or to lessen his period of disability, and Defendants are obligated to pay *Page 13 
for such treatment. Plaintiff is at maximum medical improvement, but will need future medical treatment for his lower back as a result of his December 28, 2006 work injury. Defendants are obligated to provide such future medical treatment for Plaintiff. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1 (2010).
4. Defendants may provide Plaintiff vocational rehabilitation services such as English as a Second Language classes to assist him in locating suitable employment. Gayton v. Gage Carolina Metals,Inc., 149 N.C. App. 346, 560 S.E.2d 870 (2002). However, Defendants are not obligated to provide such vocational assistance to Plaintiff.
5. Plaintiff met his burden of proving entitlement to continuing temporary total disability compensation as a result of his December 28, 2006 work injury, from the date of the work injury through the present and continuing, except for the brief period Defendants would be entitled to a credit for earnings after Plaintiff attempted to return to work. Plaintiff proved that he made reasonable, but unsuccessful efforts to locate suitable employment within the permanent work restrictions issued by Dr. Grubb. Defendants did not present sufficient evidence showing that there are suitable jobs Plaintiff is capable of getting but for his illegal alien status. N.C. Gen. Stat. § 97-29 (2010);Gayton, 149 N.C. App. 346, 560 S.E.2d 870 (2002);Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. Attendant care is recognized as necessary to effect a cure, provide relief, or lessen the period of disability as required by N.C. Gen. Stat. § 97-2(19), and no prior authorization is required in order for the care to be recoverable. Boylan v.Verizon Wireless, ___ N.C. App. ___, 685 S.E.2d 155 (2009). The attendant care provided to Plaintiff by his wife was reasonably required to either effect a cure, to give relief, and/or to lessen Plaintiff's period of disability. Plaintiff is entitled to compensation at the rate of $8.00 per hour for the eight hours per day, five *Page 14 
days per week for seven weeks that his wife could not work because he needed attendant care services. Plaintiff is entitled to compensation for 280 hours of attendant care at the reasonable rate of $8.00 per hour which amounts to $2,240.00 for the attendant care provided by his wife. N.C. Gen. Stat. § 97-2(19) (2010).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall resume payment of temporary total disability compensation to Plaintiff from the date of termination at the rate of $293.35 per week until further Order of the North Carolina Industrial Commission. Any accrued compensation shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred in the future as a result of Plaintiff's December 28, 2006 work injury for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff is approved for Plaintiff's counsel, to be deducted and paid directly to Plaintiff's counsel from the accrued compensation due Plaintiff and thereafter by deducting and paying to Plaintiff's counsel every fourth compensation check.
4. Defendants shall pay the costs of these proceedings.
This the 24th day of March 2011. *Page 15 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1